# IN THE UNITED STATES BANKRUPTCY COURT FOR
# THE DISTRICT OF PUERTO RICO

| | |
|---|---|
| IN RE:<br><br>RODOLFO OROZCO GALINDO<br>DESSIE L VEGA SORRENTI<br><br>Debtors.<br><br>RODOLFO OROZCO GALINDO<br>DESSIE L. VEGA SORRENTI<br><br>Plaintiff,<br><br>DEPARTEMENT OF TREASURY OF THE COMMONWEALTH OF PR<br><br>Defendants. | CASE NO. 16-07303 EAG13<br><br>Chapter 13<br><br><br><br>ADVERSARY NUMBER: 22-00028 EAG |

## OPINION AND ORDER

Pending before the court is a motion for summary judgment filed by Mr. Rodolfo Orozco Galindo and Mrs. Dessie Vega Sorrenti for violation of the discharge injunction by the Department of Treasury (Dkt. No. 21) and Treasury's opposition (Dkt. No. 30). For the reasons stated below, the court grants partial summary judgment in favor of the debtors.

## I. Jurisdiction

This court has jurisdiction over the subject matter and the parties pursuant to 28 U.S.C. §§ 1334 and 157(a), Local Civil Rule 83K(a), and the General Order of Referral of Title 11 Proceedings to the United States Bankruptcy Court for the District of Puerto Rico dated July 19, 1984 (Torruella, C.J.).[1] This is a core proceeding in accordance with 28 U.S.C. § 157(b).

---

[1] Unless otherwise indicated, all references to "Bankruptcy Code" or to specific statutory sections are to the Bankruptcy Reform Act of 1978, as amended, 11 U.S.C. §§ 101-1532. All references to "Bankruptcy Rule" are to the Federal Rules of Bankruptcy Procedure, and all references to "Rule" are to the Federal Rules of Civil Procedure. All references to "Local Bankruptcy Rule" are to the Local Bankruptcy Rules of the United States Bankruptcy Court for

1

**II. Uncontested Facts**

The following facts are uncontested pursuant to Rule 56 and Local Civil Rule 56, made applicable to these proceedings by Bankruptcy Rules 9014(c) and 7056 and Local Bankruptcy Rules 1001-1(b) and (d):

1. On September 13, 2016, Mr. Rodolfo Orozco and Mrs. Dessie Vega filed for bankruptcy under Chapter 13. (Bankr. Dkt. 1.)
2. The Puerto Rico Treasury Department was listed in Schedule E. (Bankr. Dkt. No. 17.)
3. On February 21, 2017, Treasury filed its proof of claim number 9-1 in the amount of $1,002,214.24, including priority and unsecured amounts. (Bankr. Claim Register.)
4. On June 22, 2017, Treasury filed its proof of claim number 10-1 with a post-petition claim for income tax year 2016 under §1305(a)(1). (Bankr. Claim Register.)
5. On June 22, 2017, the debtors filed a chapter 13 plan which provided for Treasury's priority claim. (Bankr. Dkt. No. 77.)
6. The plan was confirmed by the court on August 22, 2017. (Bankr. Dkt. No. 89.)
7. On November 7, 2017, the debtors filed a post confirmation modification of the plan. The modified plan retained the provision regarding payment to Treasury's claim. (Bankr. Dkt. No. 91.)
8. The post confirmation modification of the plan was approved by the court on November 7, 2017. (Bankr. Dkt. No. 94.)
9. On November 14, 2017, Treasury filed an amended proof of claim number 9-2 in the amount of $1,002,214.24, including unsecured priority debt of $60,673.70 and a general unsecured debt of $941,540.54. Amended proof of claim number 9-2 included debts for income tax returns for years 2002 to 2015. (Bankr. Claim Register, amended proof of claim No. 9-2.)

---

the District of Puerto Rico. And all references to "Local Civil Rule" are to the Local Rules of Civil Practice of the United States District Court for the District of Puerto Rico.

10. Also on November 14, 2027, Treasury filed an amended proof of claim number 10-2 in the amount of $50,888.25, for income taxes for the period of 2016, under § 1305(a)(1). (Bankruptcy Claim Register, amended proof of claim 10-2).

11. On January 30, 2019, Treasury filed an amended proof of claim number 10-3 in the amount of $43,456.92, for income taxes for the period of 2016, under § 1305(a)(1). (Bankruptcy Claim Register, amended proof of claim 10-3).

12. On November 29, 2021, upon the debtors' completion of the chapter 13 plan payments, the court entered the discharge order. (Bankr. Dkt. No. 206, Bankr. Dkt. No. 209).

13. The trustee distributed funds to Treasury as follows: (1) priority claim distribution in the amount of $60,673.70 for proof of claim number 9-2, (2) priority claim distribution in the amount of $43,456.92 for proof of claim number 10-3, and (3) unsecured claim distribution in the amount of $15,260.84. (Bankr. Dkt. No. 213.)

14. On March 28, 2022, the bankruptcy case was closed. (Bankr. Dkt. No. 216.)

15. On April 18, 2022, Treasury sent to Mrs. Vega the following notice of garnishment:

### Notice of Garnishment

[QR code] Dessie L. Vega
Sorrentini PO BOX 51911
Toa baja PR 00950-1913

Date: 18 April 2022
Taxpayer ID: 17377-60768
Correspondence ID: L0363792960

Dear Taxpayer,

On April 18, 2022, we effectuated a garnishment in favor of the Secretary of the Treasury on credits or money payable to your name at any financial institution in Puerto Rico in the amount of **$91,508.10** (see details on the reverse). This garnishment includes debt for unpaid taxes, fines, interest, fees, penalties, and costs. Such garnishment constitutes a lien in favor of the Government of Puerto Rico on all movable property of the debtor. It is preventive in nature and is effectuated with the purpose of guaranteeing the collection of your debt.

**Next steps:**

**Thirty (30) days after the date of this notice**, such garnishment shall be enforced if:
1. You have not paid the debt in full, either through payment or evidence thereof.
2. You have not challenged the garnishment in the Court of First Instance, (as established in Article 335 of the Political Code of Puerto Rico, as amended, and

3

Section 6060.01 and Section 6060.02 (j) of the Internal Revenue Code of Puerto Rico of 2011, as amended).

**Once the seizure is executed**, financial institutions are obligated to remit to the Secretary of Finance the total amount garnished to be accredited to your debt. As for any balance not covered by this garnishment, the Secretary of the Treasury may resort to any other action to collect such balance without any need for additional notice.

**To avoid further accrual of interest and fees, you should pay off the debt immediately.** To make the payment, access SURI through https://suri.hacienda.pr.gov.

**If you have evidence of having made the payment or believe that the debt is invalid**, you must present the evidence at any of our Taxpayer Service Centers around the island and visit the Bayamón Collection District (1-787-740-3366).

(Certified translation of Notice of Garnishment, Dkt. No. 41.)

16. The notice of garnishment stated that the debt collected belonged to the following periods:

| PERIOD | Main | Interest | Fee | Penalties | Fines/Other | Balance Due |
|---|---|---|---|---|---|---|
| Dec. 2014 | $19,321.71 | $7,994.28 | $2,552.70 | $0.00 | $5,643.40 | $35,512.09 |
| Dec. 2016 | $37,112.25 | $15,172.54 | $3,711.22 | $0.00 | $0.00 | $55,996.01 |
| **Total** | $56,433.96 | $23,166.82 | $6,263.92 | $0.00 | $5,643.40 | $91,508.10 |

(Certified translation of Notice of Garnishment, Dkt. No. 41.)

## III. **The Parties' Allegations**

The debtors allege that Treasury violated the discharge injunction. On April 18, 2022, Treasury issued a garnishment notice to several banks were the debtors held bank accounts regarding debts for the years 2014 and 2016 in the amount of $91,508.10. However, the debtors had paid these debts through their chapter 13 plan.

Treasury alleges that it did not violate the discharge injunction. First, Treasury states that the debts included in the notice for years 2014 and 2016 were priority claims and non-dischargeable, hence, the garnishment notice could not be in violation of the discharge injunction. The tax debt for year 2014 was entitled to priority under §507(a)(8)(A)(i).  And the tax debt for year 2016 was a post-petition debt to which proof of claim was filed under § 1305. The notice did not include amounts related to the debtors' dischargeable debts.

Finally, Treasury alleges that the notice dated April 18, 2022, instructed the debtors as to what steps to take if the amounts were not owed. The notice also instructed them to notify Treasury

4

if the debt was already paid and invalid and to submit evidence accordingly. Treasury alleges that the notice was issued due to a software error and no amounts were withdrawn from debtors' bank accounts.

## IV. <u>Legal Analysis and Discussion</u>

### a. <u>Summary Judgment Standard</u>

The standard for summary judgment is well-known. Pursuant to Rule 56 made applicable to these proceedings by Bankruptcy Rules 7056 and 9014(c), summary judgment is available "if the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(c); <u>Borges ex rel. S.M.B.W. v. Serrano-Isern</u>, 605 F.3d 1, 4 (1st Cir. 2010). The moving party bears the burden of showing that "no genuine issue exists as to any material fact" and that he is "entitled to judgment as a matter of law." <u>Vega-Rodríguez v. P.R. Tel. Co.</u>, 110 F.3d 174, 178 (1st Cir. 1997).

Once a properly supported motion has been presented before the court, the opposing party "can shut down the machinery only by showing that a trial-worthy issue exists" that would warrant the court's denial of the motion for summary judgment. <u>McCarthy v. Northwest Airlines</u>, 56 F.3d 313, 315 (1st Cir. 1995). For issues where the opposing party bears the ultimate burden of proof, that party cannot merely "rely on the absence of competent evidence, but must affirmatively point to specific facts that demonstrate the existence of an authentic dispute." <u>Id</u>. However, not every factual dispute is sufficient to frustrate summary judgment; the contested fact must be material and the dispute over it must be genuine. <u>Id</u>. An issue is "genuine" if it could be resolved in favor of either party. A fact is "material" if it is potentially outcome-determinative. <u>See</u> <u>Calero-Cerezo v. United States DOJ,</u> 355 F.3d 6, 19 (1st Cir. 2004).

In assessing a motion for summary judgment, the court "must view the entire record in the light most hospitable to the party opposing summary judgment, indulging in all reasonable inferences in that party's favor." <u>Griggs-Ryan v. Smith</u>, 904 F.2d 112, 115 (1st Cir. 1990) (citations omitted). The court may safely ignore "conclusory allegations, improbable inferences, and unsupported speculation." <u>Medina-Munoz v. R.J. Reynolds Tobacco Co.</u>, 896 F.2d 5, 8 (1st Cir. 1990) (citations omitted). However, there is "no room for credibility determinations, no room for

5

the measured weighing of conflicting evidence such as the trial process entails, [and] no room for the judge to superimpose his own ideas of probability and likelihood (no matter how reasonable those ideas may be) . . . ." Greenburg v. P.R. Mar. Shipping Auth., 835 F.2d 932, 936 (1st Cir. 1987); see also Mulero-Rodriguez v. Ponte, Inc., 98 F.3d 670, 677 (1st Cir. 1996) (reversing summary judgment and emphasizing that "determinations of motive and intent . . . are questions better suited for the jury.") (Quoting Petitti v. New England Tel. & Tel. Co., 909 F.2d 28, 34 (1st Cir. 1990)).

The parties have established that no material issues of fact exists and that the court may enter judgment as a matter of law.

### b. Are Priority Claims Nondischargeable?

First, the court will address Treasury's allegation about non-dischargeability. Essentially, Treasury alleges that the debts included in the garnishment notice were priority debts and, therefore, nondischargeable. And, given that the debts were not dischargeable, by sending the garnishment notice, Treasury did not violate the discharge injunction.

Regarding the interrelation of priority and nondischargeable claims, the Bankruptcy Appellate Panel for the First Circuit explained in Bentley v. Boyajian (in Re Bentley):

> [N]nondischargeability is not the same as priority. Priority gives a claim a better right to estate assets or plan payments--*i.e.*, to the funds distributed through bankruptcy--than is enjoyed by other unsecured claims. Nondischargeability, on the other hand, confers no priority as to estate assets; it merely causes a debt to survive the discharge, such that its holder can continue to collect it despite the discharge. Certain nondischargeable debts also happen to be priority claims, but only because the same debts appear on two lists: thus, in Chapter 13, spousal and child support obligations appear both on the list of priority claims, at 11 U.S.C. § 507(a)(7), and on the list of debts excepted from discharge, at 11 U.S.C. §§ 523(a)(5) and 1328(a)(2). But priority does not *per se* confer or entail nondischargeability; and nondischargeability does not *per se* confer or entail priority.

Bentley v. Boyajian (in Re Bentley), 266 B.R. 229, 235-36 (B.A.P. 1st Cir. 2001) (per curiam).

Section 1328(a) provides for the discharge of all debts provided for in the plan. Here, the debtors confirmed plan (Dkt. No.77) and the post confirmation modification of the plan (Dkt. No. 91) provided for the payment of Treasury's § 507 priority in proof of claim number 9-2. "[T]he phrase 'provided for' in section 1328(a) simply requires that for a claim to become dischargeable the plan must 'make a provision for' it, i.e., deal with it or refer to it." In re Gregory, 705 F.2d

6

1118, 1122 (9th Cir. 1983). Therefore, the 2014 debt included in the garnishment notice was provided for in the plan and discharged pursuant to this court's discharge order.[2]

### c. Violation of a Discharge Injunction

The entry of a bankruptcy discharge "operates as an injunction against the commencement or continuation of an action, the employment of process, or an act, to collect, recover or offset any such debt as a personal liability of the debtor, whether or not discharge of such debt is waived." 11 U.S.C. § 524(a)(2). See Vazquez Rodriguez v. Cooperativa de Ahorro y Credito de Cabo Rojo (In re Vazquez Rodriguez), 2016 Bankr. LEXIS 1982, *8 (Bankr. D. P.R. May 10, 2016). "If a creditor whose prepetition credit is subject to a bankruptcy discharge incurs in post-discharge efforts to collect on its claim, it will be liable for violation of the discharge injunction under § 524." Lopez v. Doral Bank (In re Lopez), 500 B.R. 322, 327 (Bankr. D. P.R. 2013). A debtor asserting a violation of the discharge injunction "must show that the creditor knew that the discharge order [was] entered and intentionally engaged in conduct that violated it." In re Zine, 521 B.R, 31, 38 (Bankr. D. Mass. 2014). Because § 524 does not provide for a specific remedy within the statute, bankruptcy courts have invoked § 105(a) to enforce the discharge injunction under the mechanism of civil contempt. See United States v. Rivera Torres (In re Rivera Torres), 309 B.R. 643, 647 (B.A.P. 1st Cir. 2004).

"[T]he discharge injunction only prohibits those communications 'designed to collect, recover or offset any [discharged] debt as a personal liability of the debtor,' correspondence that is 'informational in nature' does not violate the automatic stay or discharge injunction." Perez v. P.R. Treasury Dep't (In re Padilla), 2023 Bankr. LEXIS 652, *29-30 (quoting Kirby v. 21st Mortg. Corp. (In re Kirby), 599 B.R. 427, 440 (B.A.P. 1st Cir. 2019). "[A] clear demand for payment of a pre[-]petition debt accompanied by coercion in the form of threatened action or some other consequence for nonpayment, or harassment to induce the debtor to pay" violates the discharge

---

[2] The actions that Treasury undertook to collect the section 507 priority debt included in its proof of claim number 9-2 is a sufficient basis for finding that Treasury violated the discharge injunction. It is, thus, unnecessary to address Treasury's actions to collect the section 1305 priority debt included in its proof of claim number 10-3. Although the section 1305 priority debt is not expressly provided for in the plan, it was provided for in the debtors' bankruptcy case because in Puerto Rico the chapter 13 trustee pays all filed proofs of claim that are not disallowed.

injunction. Kirby v. 21st Mortg. Corp., 599 B.R. at 441. "The First Circuit also requires courts to look beyond the particular content of communications and consider whether the circumstances and context in which the communications occurred 'give rise to an inference of coercion.'" Kirby v. 21st Mortg. Corp., 599 B.R. at 442 (quoting Bates v. CitiMortgage, Inc., 844 F.3d 300 (1st Cir. 2016)). "In this circuit, courts assess whether conduct is improperly coercive or harassing under an objective standard." Ramos v. Coop. de Ahorro y Credito Aguas Buenas (In re Ramos), 2021 Bankr. LEXIS 2666, *9 (Bankr. D. P.R. Sept. 29, 2021).

The court finds that Treasury's communication is coercive, as it notifies the garnishment of funds from the debtors' bank accounts. The notice of garnishment is a collection action, not informational, and an attempt to force payment from the debtors. Therefore, the notice of garnishment sent on April 18, 2022, violated the discharge injunction. Treasury's allegations regarding the disclaimers in the notice of garnishment are without merit. The disclaimers in no way nullify the serious collection action taken by Treasury when it garnished the debtors' bank accounts.

## V. Conclusion

For the reasons stated above, the court finds that Treasury's garnishment notice was a collection action in violation of the discharge injunction. Therefore, the court grant's partial summary judgment in favor of the debtors. (Dkt. No 21) and denies Treasury's opposition. (Adv. Dkt. No. 30).

An evidentiary hearing shall be scheduled to ascertain and quantify the debtors' damages resulting from Treasury's violation of the discharged injunction.

IT IS SO ORDERED.

In San Juan, Puerto Rico, this 29th day of August, 2025.

Edward A. Godoy
United States Bankruptcy Judge

8